## TERRE HAUTE & LOGANSPORT RAILWAY COMPANY v. ERDEL.

[No. 20,412.    Filed October 12, 1904.]

RAILROADS.—*Failure to Fence Right of Way.—Right of Abutter to Fence.*—
Where a railroad company fails to fence its right of way securely as
provided by statute, or to keep same in repair, the abutting land-
owner has the right upon proper notice to build or repair the same and
collect the cost thereof, together with his attorney's fees, from such
company. *pp. 350, 351.*

SAME.—*"Repairing" Fence.*—Where a railroad company has built a proper
fence along its right of way and lets it so far decay as to become use-
less, the abutting land-owner has the right upon giving the statutory
notice to build an entirely new fence in "repair" of the old one, since
by §5323 Burns 1901, it is the duty of such company to fence its right
of way, and by §5324 time is given in which to build the first fence,
and by §5325 it is made the duty to maintain the fence after being
built, the three sections being a statutory scheme to secure and main-
tain a proper fencing of the railroad's right of way.  *p. 350.*

From Clinton Circuit Court; *Joseph Claybaugh,* Judge.

Action by William Erdel against the Terre Haute &
Logansport Railway Company for repairing a fence
along its right of way, and attorney's fees. From a judg-
ment in favor of plaintiff for $57.15, the defendant ap-
peals. Transferred from the Appellate Court under
§1337u Burns 1901.  *Affirmed.*

*C. G. Guenther, Braden Clark* and *J. G. Williams,* for
appellant.
*Joseph Combs,* for appellee.

HADLEY, J.—Appellee alleges in his complaint that the
right of way of appellant's railroad abuts on his farm for
about forty rods. Many years ago, and within one year
after the completion of the railroad, appellant constructed
on said abutting line a sufficient fence as required by
§5323 Burns 1901, made of oak posts, barb-wire, and a
single line of six-inch boards reaching from post to post

sixteen feet apart. In the course of time some of the posts were burned off by fires, others rotted off, the boards became detached at one or both ends, the wire became rust eaten and broken, and the fence generally so severed and fallen as to be inadequate to turn domestic animals, and for more than one year prior to July, 1902, appellant had permitted said fence to remain so broken and out of repair. On said date appellee gave appellant written notice that said fence was out of repair and unfit to turn horses, cattle, hogs, and other stock, and appellant having failed for more than thirty days thereafter to make, or to commence to make repairs to the fence, appellee entered upon the right of way and rebuilt and repaired the same, and restored it to the condition required by the statute. On November 4, 1902, after he had completed the fence, appellee made out and furnished appellant a sworn itemized statement of the expense of rebuilding and repairing the fence. More than sixty days have elapsed since said statement was furnished appellant, but the account remains unpaid. The notice and proceeding were under §5325 Burns 1901. Under an answer of general denial, judgment was awarded appellee for the full amount of the claim. Appellant's motion for a new trial for failure of proof was overruled.

The evidence shows, without contradiction, that the fence was originally constructed and had become out of repair as alleged in the complaint; that the notice given was under §5325, *supra,* to the effect that it was out of repair, and insufficient to turn stock, and that in reconstructing the fence appellee used wholly new posts and new barb-wire, thus making a new structure. Based upon this proof, appellant's only contention here is that, since the evidence shows that appellee constructed a fence altogether of new material, it was therefore a new and original fence, and not a repaired fence, and that proof of notice that the fence was out of repair, as provided in §5325, *supra,* will

not sustain a verdict for the cost of constructing a new fence, as provided in §5324 Burns 1901.

There is no substance in appellant's contention. Section 5323 of the statute imposes upon railroad companies the duty of fencing in their rights of way, prescribes when it shall be done, and the sort of fence they shall make. To secure prompt performance §5324, *supra,* provides that when the company fails for more than a year after the completion of its road to fence it, the abutting landowner may, after notice of his intention, enter upon the right of way, construct a fence, and recover the cost and attorney's fees from the company. Section 5325, *supra,* provides that, when such original fence has been completed, the company, lessee, assignee, receiver, or other person or corporation operating the road, shall keep the same in good repair and sufficient to answer the purpose for which it was constructed, and upon the company's failure to make or commence repairs within thirty days after notice the abutting landowner may make them and recover the cost thereof from the company.

Here is a complete statutory scheme to secure and maintain the fencing of a railroad company's right of way in a manner sufficient to keep all domestic animals from its track. The scheme embraces, first (§5323, *supra*), the duty to fence and manner of its discharge; second (§5324, *supra*), time limit, after the completion of the railroad, for the construction of the first or original fence, and landowner's right upon default; and third (§5325, *supra*), the duty to maintain, and landowner's right upon the company's failure to keep up the fence according to the original standard. The complaint charges, and the evidence shows, that the first or original fence was timely constructed as required by law. This discharged the company's obligation under §5324, *supra,* and the new duty of keeping it up, or "in good repair and sufficient to answer the purpose for which it was constructed," arose under §5325,

*supra.* This later duty was not performed; and, appellant having failed to repair after notice that the fence had become decayed and dilapidated, appellee had the right to enter and restore the fence. In doing so, if he found, as he did, the fence broken and down, and the materials of which it had been constructed rotten and unfit to be used in the formation of a proper fence, a substitution of all new and suitable materials in the reconstruction was permissible within the meaning of §5325, *supra,* and precisely the thing he should have done.

Judgment affirmed.